C. W. Nance *vs.* Andrew Gregory & Thomas W. Pettus.

### April Term, 1874.

Assignee's sale—Right of purchaser to enquire into usury.—A purchaser of land, at the sale of an assignee in bankruptcy, who buys subject to a prior mortgage, is entitled to enquire into the usury included in the debt secured by the prior mortgage.

Usury—Jurisdiction—Judgment at law.—In this state, the jurisdiction of courts of law and equity in matters of usury is concurrent, and after a judgment at law equity will not entertain a bill for relief except in special cases where the remedy at law was inadequate; and this whether any defense on the ground of usury was made at law or not.

Usury—Judgment a mere security.—But in order to bar relief in equity, the judgment at law must be the result of a litigation *in invitum*, not of a proceeding in form a litigation, while in reality only a mode of securing the usurious loan.

*Thos. H. Malone*, for complainant.

——— *Hicks*, for defendant.

THE CHANCELLOR :—At the sale of the assignee in bankruptcy of the defendant Gregory, the complainant Nance became the purchaser of a house and lot in Nashville, which was subject to a mortgage made on the 20th of April, 1861, by Gregory to the defendant Pettus to secure a note of that date at twelve months for $1,361.16. This bill is filed by Nance charging that the mortgage debt was usurious, and seeking to diminish the debt by the amount of the usury.

The first question which presents itself is, whether the purchaser at an assignee's sale in bankruptcy can impeach a prior mortgage debt for usury. Upon the precise point raised no authority has been produced by the learned counsel on either side, and I am left to decide the question upon general principles. At a previous term of this court, upon argument and a careful examination of the authorities, I came to the conclusion that a purchaser of land had the right to enquire into the usury included in the debt secured by a prior mortgage, while the purchaser of an equity of redemption subject to the prior mortgage, could not. *Shankland* v. *Nashville Building Association, ante,* p. 459. The correctness of this conclusion is not contested by the learned counsel for the defendant Pettus. But it is suggested, rather than urged, that inasmuch as the bill alleges that the complainant bought the estate of the bankrupt, and the answer avers that he bought subject to the mortgage, that the case falls under the second branch of the ruling. The bill, however, simply alleges that the complainant bought the house and lot at the assignee's sale, for which a deed was made to him by the assignee, and that, upon examination of the title, he found that defendant Pettus held a mortgage, etc. The statement in the answer relied on is, therefore, not responsive to anything in the bill, and is not evidence for the defendant. *Beech* v. *Haynes, ante,* p. 569. In the absence of any evidence of what took place at the sale, even if such evidence was admissible, the fact of the sale of the house and lot being admitted, it must be taken that the sale passed the entire interest of the assignee in the property. And, in

the absence of all authority, I think the assignee's sale must carry to the purchaser precisely the same rights that a sale by the bankrupt would have done previous to any act of bankruptcy. I find that in England, after an act of bankruptcy, a court of equity enforces the penalty of usury, at the instance of the assignee or any of the creditors, without insisting upon the otherwise invariable rule, that where that forum is resorted to, the holder of a usurious instrument shall be treated as a creditor for the amount actually advanced. *Ex parte Skip*, 2 Ves. 489 ; *Benfield* v. *Solomon*, 9 Ves. 84 ; *Ex parte Scrivener*, 3 V. & B. 14. And I know of no principle upon which the assignee in bankruptcy, or a purchaser under him, can stand in a different situation from the bankrupt previous to bankruptcy, or a purchaser under him. The bankrupt law certainly vests in the assignee the estate of the bankrupt, with all his authority to sell or dispose of the same. Act of 1867, 176, 14, U. S. Stat. §§ 5044, 5046.

The next question raised by the defense is, that the bankrupt himself was precluded from raising the issue of usury by the judgments rendered against him at law on the usurious securities, and, of course, could convey no such right to his assignee. The facts upon this branch of the case, as admitted by the defendant Pettus in his answer and deposition, are that he made his first loan of money to his co-defendant Gregory on the 12th of May, 1860, paying him $540, and taking two notes of that date each for $300, payable one day after date, upon which he caused summons to be issued and served, and judgments taken before a magistrate the same day, which were regularly stayed by a stayor. On the 20th of April, 1861, upon an additional advance of $290 in money, Gregory agreed to give, and did give a note for the $1,361.16, covering the amount of these judgments, and another judgment of the 28th of July, 1860, in favor of one W. W. Lyles for $350 assigned to the defendant, with interest, and the new loan, and the interest for twelve months, the time given on the face of the note ; and secured the same by the

mortgage in controversy. Afterwards, in consideration that he, Pettus, would give him further time on the debt, Gregory, on the 6th of September, 1867, confessed judgment in the Circuit Court of Davidson county for the amount due upon the mortgage debt, $1,800.15 and $4.90 costs, and he, Pettus, gave him "a stay of execution for six months."

It is not seriously insisted that the judgments of the 12th of May, 1860, preclude enquiry into the usury embraced in them. The judgments themselves are too obviously usurious securities, being merely resorted to for the better securing of the debt, and the money being paid upon the faith of them. But it is argued that the judgment by confession, of the 6th of September, 1867, is a bar to any examination into the usurious character of the consideration on which the judgment was based. It is true that, in this state, the jurisdiction of courts of law and courts of chancery is ordinarily concurrent over usury, and that, *after trial at law*, a court of equity will not entertain a bill for relief against usury, except in special cases, where, on account of the complicated and embarrassed state of facts in which the usury originated, the remedy at law is inadequate to give relief. *McKoin* v. *Cooley*, 3 Hum. 561; *Lindsley* v. *James*, 3 Cold. 477. And this rule, perhaps, applies after a trial at law, whether any defense at all was made or not. *French* v. *Shotwell*, 5 J. Ch. 515. The party having had his day in court must abide by his own neglect. But all the authorities agree that there must be an actual litigation *in invitum* against the defendant, where the parties are at arms length, not a proceeding, which although in form a litigation, is in reality a mere mode of securing the usurious loan. *Frierson* v. *Moody*, 3 Hum. 565; *Thompson* v. *Van Buren*, 3 J. Ch. 375; *Haley* v. *Long*, Peck, 93. Here, it is obvious from the statement of the defendant himself, that the confession of judgment was simply a renewal of the usurious security in consideration of an extension of time, and the judgment is no bar to the relief sought. The complainant is entitled to his decree of reference to ascertain the usury.